## HOTCHKISS v. ENGLISH.

*Partnership — what is not — authority of partner.*

P. was authorized by E. to sell a patent right in five counties, and account to E. for one-half the proceeds, and was authorized to indorse such notes as were received upon sales, for the purpose of turning them into money. The parties in no way held themselves out as partners. As a part of a conspiracy to defraud E., P., without the knowledge of E., indorsed the names of P. and E., as accommodation indorsers, on a note not received in the business. *Held,* (1) that the agreement did not constitute P. and E. partners, and (2) that, even if they were so, the indorsement was entirely outside of the apparent authority of P., and E. was not liable thereon even to an innocent holder for value.

APPEAL by defendant English from a judgment on the report of a referee.

The action was brought by Levi Hotchkiss against Nathan English and others, upon a promissory note made by one J. C. Cummings, payable five months after date, for $350, to the order of English and Perine, two of the defendants. The defendant English alone defended and appealed from the judgment. The referee found as a matter of fact that Cummings signed said note at the instance of one Belden, who paid him $2.00 for signing the same, and that one of the defendants, Perine, indorsed said note

in the names of English and Perine, and delivered the same to Belden without any consideration, and that Belden delivered note to one Spaulding, who transferred it to Mills, one of the defendants, who transferred it before maturity to the plaintiff, who paid for it full value and consideration, and became a *bona fide* holder thereof without notice of the circumstances under which it was made. The referee held as a conclusion of law that the plaintiff was entitled to recover of the defendants the amount of said note, the sum of $395.25, besides costs, and ordered judgment accordingly.

*A. J. Wilkin,* for appellant.

*Ripsom & Terry,* for respondent.

Present — MULLIN, P. J., E. DARWIN SMITH and MORGAN, JJ.

E. DARWIN SMITH, J. The promissory note upon which this action was brought was confessedly conceived in conspiracy and fraud, and was made and indorsed and put in circulation to deceive and to cheat. Passing apparently through a number of hands, privy more or less to the fraud, or aware of the dishonesty of the transaction, it finally reached the hands of the plaintiff, who took it upon untrue representations in regard to it, but for a good consideration and without notice of the circumstances under which it was made and put into circulation. The question is, whether the defendant English, who was the proposed victim of this conspiracy and fraud, who never in person signed or saw said note, or heard of its existence, till he received notice of protest for its non-payment, is cut off from all defense to it on the ground that the plaintiff has thus acquired the rights of a *bona fide* holder thereof.

In the cases in which it has been held, and they are very numerous, that the holder of negotiable commercial paper received before maturity in the ordinary course of business, and for full value, is protected from almost every species of defense, except that the instrument was void by statute, the paper had upon its face the genuine signature of the maker, or indorser, or party sought to be charged. Such was the case of *Chapman* v. *Rose,* 47 How. 13, in the Court of Appeals, since reported in 56 N. Y. 137. In *Whitney* v. *Snyder,* 2 Lans. 477, and *Foster* v. *McKinnon,* L. R., 4 C. P. 704, in which it was held that when the party did not intend to issue

a promissory note, but a different instrument, if guilty of no laches or negligence, he was not bound, the paper upon its face bore the genuine signature of the defendant.

The referee finds in this case that said note was indorsed by the defendant Perine, in the name of English & Perine, and delivered by him to Belden. He does not find that English and Perine were partners, but his findings for the plaintiff upon the law were doubtless made and based upon that assumption, upon his construction of the agreement set out in his report. This agreement does not constitute them partners. It is rather a power of attorney from English to Perine to sell his patent right in the five counties named, with a provision to account to him and pay him half the proceeds of sales as a compensation for his services, with a special power to convert the notes, if any were received on sales, into money by indorsement for that purpose.

These parties never held themselves out to the public as partners, never did any business in a partnership name, and the fact of the making of this agreement was probably known only to the parties, and to the persons concerned in getting up this note, and such persons as they may have communicated it to in furtherance of the scheme of fraud. The plaintiff testified that the defendant Mills informed him, when he transferred to him the said note, that English and Perine were partners in the manufacture of agricultural instruments, which was an untrue representation.

It is, therefore, clear that both the plaintiff and Mills, who are the only persons who, as the holders of this note, can have any pretense to be *bona fide* holders of it, did not take it with any knowledge of an actual partnership, in fact, between English and Perine, or upon any reputation of an actual parnership between them, based upon any acts or business of theirs, or derived from any holding of themselves out as partners to the public.

Where partners have been held liable upon negotiable paper fraudulently made or indorsed by one of the firm, the fact of the existence of such partnership has ordinarily been undoubted and notorious. In such cases, any person of the vicinity might very properly receive the partnership paper upon the presumption that it was lawfully made, and in the legitimate business of copartnership. This presumption very reasonably protects the *bona fide* holders of partnership paper from any defense by the defrauded partners. But this principle will not protect the holder of negotia-

Hotchkiss v. English.

ble paper, apparently made or indorsed by a copartnership, against the forgery of such paper, and such, I think, is the true defense to this note. Assuming that the contract between English and Perine for certain purposes constituted them partners as between themselves, neither of them had any authority to make promissory notes, or to indorse such notes in their joint names, except as expressly stipulated in said agreement.

The indorsement of the name of English and Perine upon this paper was, and is, a simple forgery. Perine had no authority to make such indorsement. They were not general partners. Said note was not given or received in any partnership business. The said agreement simply authorized Perine to indorse notes received on the sale of patents. He had sold no patents. He did not receive this note on the sale of any patent, or other consideration. He made the indorsement without the slightest pretense of right to cheat and defraud English. At most, he was the agent of English, under a special power to indorse particular notes.

In 2 Parsons on Bills, 593, he says : "Authority to draw, make or indorse a bill may, of course, be given to an agent. When the agent signs the name of his principal without authority, and with a malicious intent, it is a forgery." That is precisely this case. 2 Bishop on Crim. Law, § 528, defines forgery as follows : "Forgery is the fraudulent making of a false writing, which, if genuine, would be apparently of some legal efficacy." And vide 4 Blackst. Com. 247 ; Rex v. Taylor, 2 East's P. C. 853. The false making of a note, or other instrument, is forgery; Rex v. Parker, 2 Leach, 775, 785 ; 2 R. S. 693, § 33. Here was the making of a false indorsement, which was equivalent to making a false instrument, with intent to defraud, etc. Rex v. Hart, Ben. & Had. Lead. Cas. 468. This is a "false signature, made with intent to deceive," which is the precise case stated by Justice Eyre in Rex v. Taylor, supra, and cited with approval in People v. Fitch, 1 Wend. 200.

The judgment should be reversed and a new trial granted, with costs to abide the event.

*Judgment reversed and new trial granted.*