ROOT *et al.* v. ZALLER *et al.*

(*City Court of New York, Trial Term.* December 10, 1888.)

FRAUD—EXECUTION OF PAPERS WITHOUT READING—FALSE REPRESENTATIONS.
    Where defendants, who could read and write, signed, without reading, an order for twelve insertions of an advertisement, on the representation of plaintiffs' agent that it was for three insertions, plaintiffs may recover for the twelve insertions, in the absence of evidence that defendants were prevented by fraud from reading the order.[1]

On motion for new trial.

Action by Charles T. Root and others against Louis Zaller and others for the price of certain advertisements inserted under the following order signed

---

[1] One capable of reading and understanding an instrument which he signs is bound in law to know the contents thereof, unless prevented by some fraudulent device, such as the fraudulent substitution of one instrument for another. Taylor v. Fleckenstein, 30 Fed. Rep. 99, and note; Loan Ass'n v. Esche, (Cal.) 17 Pac. Rep. 675; Campbell v. Larmore, (Ala.) 4 South. Rep. 593. But in an action on a note against one who was unable to read, the fact that the note was misread to defendant is a good defense to the action, defendant having exercised reasonable care. Bowers v. Thomas, (Wis.) 22 N. W. Rep. 710. So held that the fact that a person signs a note which has been read to him, without reading it himself, if able, is no excuse for the fraud practiced by the person who

by defendants: "Insert an advertisement in the American Exporter, to occupy the space of one-twelfth page, for twelve times; for which we will pay you sixty-seven 50-100 dollars. We do not hold you responsible for any statement or conditions not expressed in this order." Defendants, who were intelligent business men, able to read and write, signed the order at the solicitation of plaintiffs' agent. They allege that the agent represented to them that the order was for only three insertions, the price of which would be $16.87.

*Freeman & Green*, for plaintiffs. *James R. Angel*, for defendants.

McADAM, C. J. The plaintiffs claim that, as the defendants were able to read the contract for themselves before they signed it, they are bound by its provisions; in other words, having the means of knowledge at hand, the defendants were bound to avail themselves of such means, and cannot now complain of fraud, when the exercise of ordinary vigilance and caution would have rendered that impossible. This is a correct statement of the criminal law, (Barb. Crim. Law, 136, 137; *People* v. *Williams*, 4 Hill, 12;) its object being to protect that portion of the public who, from want of intelligence, cannot protect themselves, (*People* v. *Stetson*, 4 Barb. 154.) It is also the rule applicable to civil actions. 2 Kent, Comm. 484, 485; 1 Story, Eq. Jur. § 200a; 2 Starkie, Ev. 374. If a person cannot read a contract submitted to him for signature, and the contents are misrepresented to him, and he is free from negligence, he may avoid the contract for the fraud. *Whitney* v. *Snyder*, 2 Lans. 477; *Newton* v. *Insurance Co.*, 2 Wkly. Dig. 599; *Edick* v. *Dake*, 14 Hun, 481; *Bank* v. *Deal*, 22 N. W. Rep. 53; *Bowers* v. *Thomas*, Id. 710; Bigelow, Fraud, 155. But, with respect to a person capable of reading and understanding an instrument which he signs, he is bound to know the contents thereof, unless prevented by some fraudulent device, such as the fraudulent substitution of one instrument for another. *Hazard* v. *Griswold*, 21 Fed. Rep. 178; *Taylor* v. *Fleckenstein*, 30 Fed. Rep. 99. There was no substitution of papers in this case, and no fraud, except the misrepresentation of the canvasser. In *Seeright* v. *Fletcher*, 6 Blackf. 381, there was a similar misrepresentation as to the contents of the paper, and the court said: "It does not appear that the defendant was deceived by the representations made to him, and, if he was, it is manifest that it was the consequence of his own folly. * * * The defendant signed the bond without reading it himself or hearing it read, and, with all the means of knowing the truth in his power, reposed a blind confidence in representations not calculated to deceive a man of ordinary prudence and circumspection. In such a a case the law affords no relief." In *Hawkins* v. *Hawkins*, 50 Cal. 558, substantially the same proposition was held, in these words: "If a person enters into a contract with another, between whom and himself no relation of especial trust or confidence exists, and it is reduced to writing by such other person, and a means of the knowledge of the terms of the writing is equally open to both, and he signs it without reading or having it read by some one for him, he cannot avoid a liability created by the writing, even if its terms differ from the contract as agreed on verbally." To the same effect, see *Insurance Co.* v. *Hodgkins*, 66 Me. 109; *Keller* v. *Orr*, 7 N. E. Rep. 195; *Bank* v. *Steffes*, 6 N. W. Rep. 267; *McCormack* v. *Molburg*, 43 Iowa, 561; *Gulliher* v. *Railroad Co.*, 13 N. W. Rep. 432; *Wallace* v. *Rail-*

reads it, but omits purposely a material portion thereof. Brooks v. Matthews, (Ga.) 3 S. E. Rep. 627. See, also, Warden v. Reser, (Kan.) 16 Pac. Rep. 60. In an action on a written contract, which was read to defendant by plaintiffs' agent, and which the former disputes on the ground of fraud, where he testifies that he had no spectacles, and could not read without them unless the writing was plain, his negligence in failing to read the contract before signing it is a question for the jury. Chatham v. Jones, (Tex.) 7 S. W. Rep. 600. And one who contracts with an insurance agent for a certain amount of insurance, leaving the agent to select the companies and write the policies, has a right to rely on the agent in writing the policies, without reading them. Barnes v. Insurance Co., (Iowa,) 39 N. W. Rep. 122.

*road Co.*, 25 N. W. Rep. 772; and *McKinney* v. *Herrick*, 23 N. W. Rep. 767. Where a shipper accepted a bill of lading or receipt from a carrier, the court of appeals, in *Insurance Co.* v. *Railroad Co.*, 72 N. Y. 90, held that the shipper was bound to examine it, and ascertain its contents, and that he cannot set up ignorance thereof, and resort to the prior parol negotiations to vary them. The fact of not reading the document cannot be interposed to prevent the legal effect of the transaction. *Hill* v. *Railroad Co.*, 73 N. Y. 353. And so all through the books will be found decisions holding that the party asking the aid of the law must have made reasonable use of his faculties to prevent loss or injury, for he will not be assisted from the consequences of his own folly.

The defendants are intelligent business men, able to read and write, and fully comprehend the meaning, force, and effect of the language used in the contract sued upon, which is legibly written, without obscure or technical expressions, and capable of being read through in a space of time to be measured by seconds. The defendants have had the full benefit of the contract, and they cannot avoid its obligations by proof of their failure to read the paper they signed, or of reliance on what the canvasser told them, when they were as competent as he to read the document, and determine for themselves its plain import and meaning. It certainly would not be complimentary to hold that a merchant does not possess sufficient intelligence to protect himself against the arts and wiles of the ordinary book canvasser without appealing to the courts for aid. No such incapacity is imputable to the defendants. For the reasons stated there was no defense to the action, and the motion for the direction of a verdict in favor of the plaintiffs ought to have been granted. The verdict will therefore be set aside, and a new trial granted, without costs.