[Decided February 26, 1894.]

## OSBORN *v.* KETCHUM.
[S. C. 35 Pac. Rep. 972.]

1. SUIT TO REFORM A DEED — PLEADING.— In a suit to reform a written instrument the complaint should show the original agreement of the parties, should point out clearly wherein the writing differs from the agreement, and that such difference was caused by fraud or mutual mistake, and did not arise from the gross negligence of the plaintiff (*Lewis* v. *Lewis*, 5 Or. 169, and *Hyland* v. *Hyland*, 19 Or. 51, cited and approved); but in the absence of a demurrer the complaint will be held sufficient if it alleges that to make the writing conform to the actual intention of the parties it should be amended in certain specified particulars. *Hyland* v. *Hyland*, 19 Or. 51, cited and approved.

2. EVIDENCE TO REFORM A DEED.— Evidence that the parties to a deed to premises conveyed before any survey was made counted the panels in a fence on the east side, and estimated them at one rod to the panel, and allowed two rods to make the line extend to the center of the road, and estimated that the west boundary would intersect the road at a gate near some willows; and that defendant told three witnesses how the length of the east boundary was obtained, and that the west boundary would probably intersect the road near a strawstack, which is shown to be near the willows,— is sufficient to sustain a judgment for the reformation of the deed so as to convey to the center of the road, although the original conveyance was by metes and bounds which left a portion of the land next to the road unconveyed, as shown by a subsequent survey, and the land is still in the hands of the original grantor.

APPEAL from Benton: J. C. FULLERTON, Judge.

This is a suit by Louisa P. Osborn against Ketchum and Holgate to reform a deed. The facts show that the defendant M. B. Ketchum was the owner in fee of that

portion of the west half of the donation land claim of John Phillips and wife, in Benton County, Oregon, lying south of a county road that runs north, seventy-five degrees west, from the east boundary of said tract, the southeast corner of which is twenty-two chains and sixty-five links south of the center of said county road; that he and the defendant Amanda Ketchum, his wife, on August thirteenth, eighteen hundred and eighty-eight, in consideration of five hundred dollars, duly granted and conveyed to one F. Critcherson the following described premises, to wit: "Beginning at the southeast corner of the west half of the original donation land claim of John Phillips and Rhoda Phillips, his wife, from the United States government, it being claim number sixty ( 60 ), notification number six thousand two hundred and fifty-nine, in Benton County, Oregon; running thence westerly along the south line of said claim eighty ( 80 ) rods; thence northerly eighty ( 80 ) rods; thence easterly with the meanderings of the road eighty ( 80 ) rods; thence southerly eighty-one rods to the place of beginning. The intention of this conveyance is to convey forty ( 40 ) acres of land out of the southeast corner of the west half of said claim, in as near square shape as can be had." In the spring of eighteen hundred and ninety the defendant M. B. Ketchum had the said premises surveyed by beginning at the southeast corner of said tract, and following the courses and distances given in his deed to Critcherson, and there was found, lying between the said survey and the center of the county road, a tract two chains and forty links wide at the east end, that gradually grew wider as the distance increased toward the west.

Ketchum and wife, intending to convey that portion of said tract lying north of and between said survey and said county road, conveyed the same to their son-in-law, Frederick Root, by quit-claim deed, on July ninth, eigh-

teen hundred and ninety, for the expressed consideration of one hundred dollars, but designated the beginning at a point eighty-one rods north of the southeast corner of the Rhoda Phillips donation land claim. Said Frederick Root and wife, on August sixteenth, eighteen hundred and ninety, for the expressed consideration of two hundred dollars, conveyed the said tract to the defendant Amanda Ketchum, by a quit-claim deed describing the said premises as in the deed to said Root.

The plaintiff alleges that the property intended to be conveyed by Ketchum to Critcherson was, through mistake, incorrectly described, and that in order to make said deed conform to the actual intention of the parties, it is necessary that the said description should be amended so as to read as follows, to wit: "Beginning at the southeast corner of the west half of the original donation land claim of John Phillips and Rhoda Phillips, his wife, from the United States government, it being claim number sixty (60), notification number six thousand two hundred and forty-nine (6,249), in Benton County, Oregon; running thence westerly along the south line of said claim sixteen (16) chains and thirteen (13) links; thence northerly twenty-six (26) chains and ninety-seven (97) links to the Yaquina Road; thence easterly with the meanderings of the road sixteen (16) chains and seventy (70) links to the division line of said claim; thence southerly along said division line of said claim twenty-two (22) chains and sixty-five (65) links to the place of beginning. The intention of this conveyance is to convey forty (40) acres of land out of the southeast corner of the west half of said claim, extending northerly to the Yaquina Road, in as nearly square shape as can be had"; that immediately after the execution and delivery of the deed from Ketchum to Critcherson the latter went upon and established the boundaries of said land in accord-

ance with the amended description; that Ketchum was present, and afterwards assisted said Critcherson in the erection of buildings and other valuable improvements on the premises so intended to be conveyed, but outside of the limits included by measurement from the initial point according to the erroneous description. The complaint also shows that said Critcherson is the son of, and acted for, the plaintiff Louisa P. Osborn, who furnished the money to make the purchase of said premises, and for the improvements placed thereon, and that on September fourteenth, eighteen hundred and eighty-nine, she had said premises conveyed to her by the description contained in the deed to her son, and went into possession of the premises intended to be conveyed, with the knowledge and consent of the defendant M. B. Ketchum; that she removed from the state in July, eighteen hundred and ninety, and thereafter the defendants took possession of that portion of the premises lying between the county road and the forty-acre tract, described in the Ketchum deed, and the house thereon, and claim to have some right thereto adverse to the plaintiff, wherefore she prays for a decree correcting the description of said premises, for judgment for the rental value thereof while in the possession of the defendants, and for her costs and disbursements. The defendant Amanda Ketchum, for her separate answer, after denying the allegations of the complaint, alleges the conveyance of such premises to her by said Root and wife; that she is an innocent purchaser for a valuable consideration without notice or knowledge of any claim or equity of the plaintiff. The defendant M. B. Ketchum, for his separate answer, after denying the allegations of the complaint, alleges that since July ninth, eighteen hundred and ninety, he has had no interest in, or claim to, any of the disputed premises. The replies deny the allegations of new matter in

the separate answers, and the cause being at issue, was referred to F. M. Johnson to take and report the evidence to the court, which having been done, the court found that the equities were with the plaintiff, and decreed a reformation of said deed, rendered a judgment for one hundred and fourteen dollars as the rental value of said premises, and for the costs and disbursements against the the defendants, from which they appeal.

AFFIRMED.

Mr. S. T. Jeffreys (Mr. E. Holgate on the brief), for Appellant.

Mr. William Cleland (Mr. John B. Cleland on the brief), for Respondent.

Opinion by MR. JUSTICE MOORE.

1.    The plaintiff fails to allege that it was Critcherson's intention to purchase, or Ketchum's to sell and convey, the real property mentioned in the amended description, or that there was any contract entered into between the said parties, or that the mistake, if any, in the execution of the deed, was mutual; and the defendants contend that on account of this failure to so allege the complaint does not state facts sufficient to constitute a cause of suit.    It is true that in a suit to reform a deed for mutual mistake, the complaint should distinctly set forth the original agreement and understanding of the parties, point out with clearness and precision wherein there was a mistake, and show that it did not arise from gross negligence of the plaintiff: Lewis v. Lewis, 5 Or. 169.    In the case at bar it is alleged that to make the deed conform to the actual intention of the parties the description should be amended so as to read as set forth in the complaint.    The record shows that a general de-

murrer to the complaint was interposed, which, by consent, was overruled, and the defendants filed their answers. In *Hyland* v. *Hyland,* 19 Or. 51, 23 Pac. 811, it was held, a similar complaint being under consideration, that it was not a case of a defective cause of suit, but of a defective statement of it; that if the case had been presented in this court upon demurrer to the pleading, the demurrer would probably have been sustained, and that, having answered, every reasonable inference should be in favor of the complaint that could be drawn therefrom. If it had been the intention of Critcherson to purchase the real property mentioned in the amended description, and the intention of Ketchum to grant and convey another tract, then the minds of the parties never met or agreed upon the terms of the contract, and hence the mistake, if any, could not have been mutual. But here,— while conceding that the description in the deed is different from that now sought to be established,— the plaintiff distinctly alleges that it was the actual intention of both parties to purchase and convey the property by the description as amended; hence it follows that, in the absence of a demurrer to the complaint, these necessary allegations are reasonably inferred.

2. Section 855 of Hill's Code furnishes the following rule for construing the descriptive parts of a conveyance, when the construction is doubtful, and there are no other sufficient circumstances to determine it: "2. When permanent and visible or ascertained boundaries or monuments are inconsistent with the measurement, either of lines, angles, or surfaces, the boundaries or monuments are paramount." The southeast corner of the west half of the donation land claim of John Phillips and wife in Benton County, Oregon, is shown by the record to be a permanent and visible monument, forming the initial point of the premises intended to be conveyed. The

county road mentioned in one of the calls of the deed is also a permanent and visible monument, but is inconsistent with the line described as the north boundary of the tract conveyed. If there were no other sufficient circumstances to determine the tract intended to be conveyed, under the statutory rule of construction, the premises would be held to include the land described as follows: "Beginning at the initial point and running thence westerly along the south line of said claim eighty rods; thence northerly eighty rods, more or less, to the center of the road; thence easterly with the meanderings of the road eighty rods, or more, to the east line of the west half of said claim; and thence southerly eighty-one rods, more or less, to the place of beginning." The permanent and visible monument at the southeast corner, and the said road on the north of the tract, would thus become paramount to the lines, angles, and even the surface, if it were not for the limitation that "the intention of this conveyance is to convey forty (40) acres of land out of the southeast corner of the west half of said claim, in as near square shape as can be had." The intention of the parties is to be ascertained by considering all the provisions of the deed, and it is the duty of the court to give effect to such intention if practicable: 2 Devlin, Deeds, § 836. Under the rules of construction above given, qualified by said limitation, the amended description must necessarily express the intention of the parties.

F. Critcherson testified that the premises had not been surveyed when he made the contract of purchase with M. B. Ketchum; that a fence containing seventy-nine panels extended from the southeast corner along the east boundary to the county road, which they estimated at one rod to the panel, and added two rods to make the line extend to the center of the road; that he and Ketchum

estimated that the west boundary would intersect the county road at a gate near some willows; and that the site for the dwelling-house was selected by him at Ketchum's suggestion, in order to procure a supply of water and to be sheltered from the wind.   John McGee testified that Ketchum told him they counted the panels of the fence on the east boundary to determine its length, and that he showed the witness a strawstack where he said he thought the west line would intersect the county road.   W. H. Dilly testified that Ketchum told him how they obtained the length of the east boundary, and that they added two rods to extend it to the center of the road.   A. B. Alexander testified that he hauled the lumber for the dwelling-house erected upon the disputed tract, and that Ketchum told him where to unload; that Ketchum also told him how the lines would run, and said the west boundary would probably be near a strawstack he showed the witness.   M. B. Ketchum did not deny that he told McGee, Dilly, and Alexander how the lines would run, or that the west boundary would intersect the county road near said strawstack, but testified that he did not remember of having told them where the lines would probably run; that he might have told the witnesses that the line extended to the road near the strawstack.   The evidence also shows that Ketchum assisted Critcherson in building the dwelling-house, and saw the improvements as they were being made; but he testifies that they were placed there by him, and it was agreed that if Critcherson did not purchase the disputed tract, a right of way across it to Critcherson's land should be granted for one dollar. The deed describes the east boundary as being eighty-one rods, which corroborates the testimony of the witnesses that it was ascertained by counting the panels of said fence and adding two rods to extend it to the center of the road.   The evidence shows that a strawstack stood

near a cluster of willows, and that the survey according to the amended description is within about two rods of said strawstack. Without quoting more of the testimony, we think it shows beyond a reasonable doubt that the parties intended to convey by said deed the premises mentioned in the amended description. The record also shows that the defendant Amanda Ketchum accepted a quit-claim deed in which it was sought to convey to her the disputed tract, and she contends that she is an innocent purchaser for a valuable consideration without knowledge or notice of plaintiff's claim thereto. This deed to her fixes the initial point eighty-one rods north of the southeast corner of Rhoda Phillips' donation land claim. The government patent grants the north half of said claim to Rhoda Ann Phillips, and, as the premises in question are situated in the west half thereof, the initial point in the deed to Amanda Ketchum appears, from the description given in the patent, to be more than a half mile distant from the northeast corner of the tract described in the deed to Critcherson, and hence does not embrace any of the land in controversy, and even if her deed had been one of general warranty it could not support her contention. The decree must therefore be affirmed.

AFFIRMED.

[Argued January 29; decided February 26, 1894; rehearing denied.]