Argued September 20, affirmed November 16, 1920.

# ROSENBERG SUIT & COAT CO. *v.* GENERAL ACCIDENT FIRE & LIFE ASSUR. CORP.

(193 Pac. 441.)

**Reformation of Instruments—Complaint must Allege That Mistake was Mutual or Originated in Fraud.**

1. A complaint, in a suit for the reformation of a written instrument, must allege that the mistake was mutual, and did not arise from plaintiff's own gross negligence, or that his misconception originated in the fraud of defendant.

On pleading in suit for reformation of instruments, see note in 65 Am. St. Rep. 496.

**Appeal and Error—Defect in Complaint Waived, Where not Challenged Below by Demurrer.**

2.   Though the complaint for reformation of a policy of burglar insurance was defective in failing to allege that the mistake was mutual, etc., yet where it was not challenged by demurrer, it cannot, after decree, be attacked in the appellate court, and the defective statement will there be treated as sufficient.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Department 1.

This is a suit to reform a policy of insurance against loss by burglary thereunder. There was a decree for the plaintiff and defendant appeals.

AFFIRMED.

For appellant there was a brief over the name of *Messrs. Wilbur, Spencer, Beckett & Howell*, with an oral argument by *Mr. S. C. Spencer.*

For respondent there was a brief over the names of *Mr. F. S. Senn* and *Mr. Morris Goldstein*, with an oral argument by *Mr. Senn.*

BENSON, J.—There is but one question presented upon this appeal, and that is raised by defendant's contention that the complaint does not state facts sufficient to constitute a cause of suit.

The portion of the complaint whose sufficiency is challenged reads thus:

"That on the third day of October, 1918, plaintiff and defendant entered into a contract of insurance whereby defendant contracted and agreed for a premium to indemnify the plaintiff against all loss by burglary of merchandise plaintiff may have at No. 144–146 Third Street, Portland, Oregon. That it was contracted and agreed that said contract of insurance and indemnity should become effective from noon, October 3, 1918, and continue for a period of

one year. That in accordance with said contract of insurance and in accordance with said agreement, a certain policy of insurance was made, executed, and delivered by the defendant to the plaintiff, but said policy of insurance erroneously and mistakenly stated the date of the commencement of said insurance as of noon, October 8, 1918, contrary to the agreement and contract aforesaid.''

The complaint further recites that ''during the evening of October 4th and the morning of October 5, 1918,'' the burglary was effected, resulting in the loss, and that defendant was promptly notified thereof.

1, 2. Defendant relies upon the well-established doctrine that a complaint in a suit for the reformation of a written instrument must allege that the mistake was mutual, and did not arise from his own gross negligence, or that his misconception originated in the fraud of the defendant. This doctrine is too well settled to require citations to support it. However, it appears that no demurrer was interposed to the complaint, and that it was presented here for the first time. It has been repeatedly held by this court that in the absence of demurrer, and after decree, a defective statement of a cause of suit will be held sufficient, and this rule has been applied specifically to cases like the one at bar, wherein it was sought to reform a written instrument. In the case of *Osborn* v. *Ketchum,* 25 Or. 352 (35 Pac. 972), a case in which the plaintiff sought the reformation of a deed, the complaint did not allege the probative facts as fully or as clearly as is done in the instant case, and yet this court, speaking by Mr. Justice Moore says:

''In *Hyland* v. *Hyland,* 19 Or. 51 (23 Pac. 811), it was held, a similar complaint being under consideration, that it was not a case of a defective cause of

suit, but of a defective statement of it; that if the case had been presented in this court upon demurrer to the pleading, the demurrer would probably have been sustained, and that, having answered, every reasonable inference should be in favor of the complaint that could be drawn therefrom. If it had been the intent of Critcherson to purchase the real property mentioned in the amended description, and the intention of Ketchum to grant and convey another tract, then the minds of the parties never met or agreed upon the terms of the contract, and hence the mistake, if any, would not have been mutual. But here—while conceding that the description in the deed is different from that now sought to be established—the plaintiff distinctly alleges that it was the actual intention of both parties to purchase and convey the property by the description as amended; hence it follows that, in the absence of a demurrer to the complaint, these necessary allegations are to be inferred.''

The conclusion reached in the case from which we have just quoted is peculiarly applicable to the case at bar, and we conclude that the decree of the lower court should be affirmed, and it is so ordered.

AFFIRMED.

McBride, C. J., and Harris, J., concur.

BURNETT, J., Dissenting.—The only question presented to us on appeal in this case is the sufficiency of the facts stated in the complaint to constitute a cause of suit for the reformation of a contract of insurance on the ground of mistake. The first two paragraphs of that pleading are devoted to a description of the corporate character of the parties. The third paragraph reads thus:

''That on the third day of October, 1918, plaintiff and defendant entered into a contract of insurance,

whereby defendant contracted and agreed for a premium to indemnify the plaintiff against all loss by burglary of merchandise plaintiff may have at No. 144-146 Third Street, Portland, Oregon. That it was contracted and agreed that said contract of insurance and indemnity should become effective from noon, October 3, 1918, and continue for a period of one year. That in accordance with said contract of insurance and in accordance with said agreement, a certain policy of insurance was made, executed and delivered by the defendant to the plaintiff, but said policy of insurance erroneously and mistakenly stated the date of the commencement of said insurance as of noon, October 8, 1918, contrary to the agreement and contract aforesaid.''

Following this is a statement that on the evening of October 4th, the very next day after the contract was made as before stated, a burglary was committed in the plaintiff's store, whereby thirty-eight coats of many colors, eight suits, and three dresses were taken away, to the total loss of the plaintiff in the sum of $1,001. The fifth and last paragraph of the complaint reads thus:

''That immediately after said burglary and felonious taking, as aforesaid, this plaintiff notified the defendant thereof, but this defendant wrongfully denied liability. That this plaintiff has done all things required by the policy and submitted proof of loss to the defendant, and the same has been accepted, but the defendant has never questioned or denied it.''

Attached to the complaint as an exhibit is a copy of the written instrument referred to in the third paragraph.

It is a codified platitude that the objection that the complaint does not state facts sufficient to constitute a cause of suit is never waived, and may be urged for the first time in the appellate court, without assign-

ing the same as one of the grounds of appeal: Or.
L., § 72; *Bowen* v. *Emmerson*, 3 Or. 452; *King* v.
*Boyd*, 4 Or. 326; *Evarts* v. *Steger*, 5 Or. 149; *Mack*
v. *Salem*, 6 Or. 278; *McKay* v. *Freeman*, 6 Or. 449;
*State* v. *McKinnon*, 8 Or. 487; *Weissman* v. *Russell*,
10 Or. 74; *Carver* v. *Jackson County*, 22 Or. 63 (29
Pac. 77); *Ball* v. *Doud*, 26 Or. 14 (37 Pac. 70);
*Schmit* v. *Day*, 27 Or. 116 (39 Pac. 870); *Wyatt* v.
*Henderson*, 31 Or. 48 (48 Pac. 790); *Willetts* v. *Wal-
ter*, 32 Or. 413 (52 Pac. 24); *Hargett* v. *Beardsley*,
33 Or. 304 (54 Pac. 203); *Moore* v. *Halliday*, 43 Or.
250 (72 Pac. 801, 99 Am. St. Rep. 724); *Adams* v.
*Kelly*, 44 Or. 69 (74 Pac. 399); *Kalyton* v. *Kalyton*,
45 Or. 116 (74 Pac. 491, 78 Pac. 332); *David* v.
*Moore*, 46 Or. 154 (79 Pac. 415); *Horn* v. *United
States M. Co.*, 47 Or. 125 (81 Pac. 1009); *Keene* v.
*Eldriedge*, 47 Or. 181 (82 Pac. 803); *Woolley* v. *Plain-
dealer Pub. Co.*, 47 Or. 626 (84 Pac. 473, 5 L. R. A.
(N. S.) 498); *Sutherlin* v. *Bloomer*, 50 Or. 398 (93
Pac. 135); *Parrish* v. *Parrish*, 52 Or. 161 (96 Pac.
1066); *Siverson* v. *Clanton*, 88 Or. 261 (170 Pac. 933,
171 Pac. 1051); *Service* v. *Sumpter Valley R. R. Co.*,
88 Or. 554 (171 Pac. 202). It is said in argument in
the plaintiff's brief that—

"To say that a mistake is mutual is alleging a
mere conclusion of law; it is not the allegation of a
fact, and has no place in a complaint."

Even so; but this is all that is stated in the pres-
ent complaint. The only words in the faintest way
indicating a mistake are the adverbs in the clause
"erroneously and mistakenly." These add nothing
to the force of the allegation. They do not consti-
tute an issuable averment. It is analogous to the
principle that to say an act was done fraudulently is
not sufficient, but it is requisite that the facts upon

which fraud is predicated must be alleged, so that the court may draw from those facts the legal conclusion that a fraud has been perpetrated. There is no fact stated in the complaint before us indicating what the defendant intended to put into the written policy: *Evarts* v. *Steger,* 5 Or. 147, 151. For all that appears in the pleading, having been notified of the burglary before the policy was issued, or immediately after the theft, as stated in the fifth averment, the defendant purposely dated the instrument on October 8th, when it was actually issued. Neither is it stated that when the policy was delivered the plaintiff failed to observe that the date of its commencement was October 8th instead of October 3d.

· The utmost that can be predicated of the allegations of the complaint on this subject is that application was made for insurance to commence October 3d, in response to which the defendant tendered a policy beginning October 8th. This, if anything, amounts only to a breach of the preliminary contract of insurance mentioned in the complaint, for which the remedy at law for damages is ample. It is not even stated that the plaintiff accepted the policy, being legitimately ignorant of its terms. As stated in *Peninsula Lumber Co.* v. *Royal Indemnity Co.,* 93 Or. 634 (184 Pac. 562):

"In this state the precept is thoroughly established and of long standing that in suits to reform a written instrument on the ground of mistake the complaint must clearly state what the original agreement of the parties was, and point out with precision wherein there was a misunderstanding; that the mistake was mutual, and did not arise from the gross negligence of the plaintiff, or that the misconception originated in the fraud of the defendant: *Boardman* v. *Insurance Co. of Pennsylvania,* 84 Or. 60 (164 Pac. 558);

*Evarts* v. *Steger,* 5 Or. 147; *Lewis* v. *Lewis,* 5 Or. 169; *Stephens* v. *Murton,* 6 Or. 193; *McCoy* v. *Bayley,* 8 Or. 196; *Foster* v. *Schmeer,* 15 Or. 363 (15 Pac. 626); *Hyland* v. *Hyland,* 19 Or. 51 (23 Pac. 811); *Meier* v. *Kelly,* 20 Or. 86 (25 Pac. 73); *Epstein* v. *State Ins. Co.,* 21 Or. 179 (27 Pac. 1045); *Kleinsorge* v. *Rohse,* 25 Or. 51 (34 Pac. 874); *Osborn* v. *Ketchum,* 25 Or. 352 (35 Pac. 972); *Thornton* v. *Krimbel,* 28 Or. 271 (42 Pac. 995); *Mitchell* v. *Holman,* 30 Or. 280 (47 Pac. 616); *Sellwood* v. *Henneman,* 36 Or. 575 (60 Pac. 12); *Stein* v. *Phillips,* 47 Or. 545 (84 Pac. 793); *Bower* v. *Bowser,* 49 Or. 182 (88 Pac. 1104); *Smith* v. *Interior Warehouse Co.,* 51 Or. 578 (94 Pac. 508, 95 Pac. 499); *Howard* v. *Tettlebaum,* 61 Or. 144 (120 Pac. 373); *Suksdorf* v. *Spokane, P. & S. Ry. Co.,* 72 Or. 398 (143 Pac. 1104); *Hyde* v. *Kirkpatrick,* 78 Or. 466 (153 Pac. 41, 488).''

Besides the element of mutuality in mistake, an essential part of the pleading is that the mistake did not arise from the gross negligence of the plaintiff. It is as necessary to plead this feature as any other. It is not a legitimate exercise of equity jurisprudence to read into a written agreement, on the ground of mistake, terms which one or both of the parties actually, albeit wrongfully, intended should not be included. Neither should the chancellor assume to act as guardian for the heedless or careless party as against one vigilant in his own interest, and make a new contract to protect the former against his own inattention. For these reasons it is required by the long line of precedents in this state: First, that the pleading of the suitor should state facts from which the conclusion may be drawn that the mistake was indeed mutual or that of both parties, and not of one only; and, second, that the complaint should contain other averments from which the court may conclude that the plaintiff was not negligent of his own

affairs. Of course, there may be mistake of one party induced by the deceit of the other, constituting a situation from which equity will relieve the innocent party, but there is no pretense that such is the condition in the instant case. As stated in *Lewis* v. *Lewis,* 5 Or. 169, 173, citing Willard's Equity Jurisprudence:

"It is not every mistake in a conveyance that can call for the interposition of a court of equity. * * To entitle the party to relief the fact must be material, and also such that he could not with reasonable diligence have obtained knowledge of it."

Again, in *Meier* v. *Kelly,* 20 Or. 86, 94 (25 Pac. 73, 76), the rule is laid down thus:

"It has been repeatedly held by this court that, in a suit to reform a written instrument on the ground of mistake, the complaint must allege, distinctly, what the original understanding and agreement was, or point out with clearness and precision wherein there was a mistake, and that it did not arise from the gross negligence of the plaintiff, and the mistake must appear to have been mutual."

These early precedents on pleading mistake have never been overruled, but have been upheld constantly, and consistently followed by this court. Apropos to this branch of the case is the following excerpt from *Bidder* v. *Carville,* 101 Me. 59 (63 Atl. 303, 115 Am. St. Rep. 303):

"While a court of equity may decree the rescission of a contract for a mistake which is unilateral, the power should not be exercised against a party whose conduct in no way contributed to or induced the mistake, and who will obtain no unconscionable advantage thereby. * * Equity assists only the vigilant. It does not relieve against mistakes which ordinary care would have prevented. Conscience, good faith

and reasonable diligence are necessary to call a court of equity into activity.''

As to this, the complaint does not present a case of a mere defective statement of a good cause of suit. There is nothing in that pleading which in the remotest degree alluded to the requirement that the plaintiff must aver that the mistake did not arise from his own negligence. Far from that, the plaintiff does not attribute the mistake to the oversight of either party, but speaks of it impersonally, that ''said policy of insurance erroneously and mistakenly stated the date.'' In all of the cases cited by the plaintiff which discuss the question of pleading at all, some circumstances are set forth in addition to the mere execution or tender of the contract which is sought to be reformed, which tend to show the mistake, and that it was the result of the inadvertence of both parties. For instance, in *Foster* v. *Schmeer,* 15 Or. 363, 368 (15 Pac. 626, 629), Mr. Justice Thayer said:

''The pleader did not, as I consider, properly allege the facts so as to entitle a party to have, in a strict sense, the contract reformed. He should have alleged more than that it was erroneous in certain particulars, and for what purpose the partnership was formed. He would ordinarily have to set out the terms of the contract as the parties made it, what they each undertook and agreed to do, and show why its terms happened to be left out when it was attempted to be reduced to writing, or how terms not agreed upon came to be inserted. * * Reforming a written contract on the grounds of mistake is the exercise of the ordinary jurisdiction of a court of equity. That court, however, has always required, in all cases coming under that head, strong and convincing proof of the mistake. It never undertakes to make contracts for parties; it leaves them to do

that for themselves; but where it is shown that there has been a mistake, that, if not corrected, would operate to the prejudice of a party, and that it did not occur through the party's carelessness or negligence, it will correct it.''

In *Osborn* v. *Ketchum*, 25 Or. 352 (35 Pac. 972), the effort was to reform a deed. After stating the description in the deed in question and the description requisite to cover what was intended to be conveyed, the pleader, as tending to show that the mistake was mutual, went on to aver that immediately after the execution and delivery of the deed in question the grantee went into possession of the land intended to be conveyed; and that the grantor assisted him in the erection of buildings on the premises intended to be conveyed, but outside of the limits included in the erroneous description. The allegation of the conduct of the parties gives color and force to the language of Mr. Justice Moore, who wrote the opinion, to the effect that, in the absence of demurrer which might have been sustained if presented to the trial court, the pleading would be more liberally construed on appeal. He recites that the plaintiff distinctly alleges that it was the actual intention of both parties to purchase and convey the property by the amended description. In the instant case, however, there is absolutely no shadow of an allegation as to the intention of the parties in reducing the agreement to writing. Also, in *Hyland* v. *Hyland*, 19 Or. 51 (23 Pac. 811), cited in *Osborn* v. *Ketchum*, acts of the parties were averred, indicating performance of the alleged agreement from which the court could conclude that a mistake had been made in reducing the contract to writing. In other words, with the conduct of the parties in per-

formance of the covenant involved, appearing by the averments of the complaint, the legal conclusion will arise that there must be a mistake in the writing, else the parties would not have acted as they did concerning it.

As stated, the complaint simply presents a case where one party demanded a policy with one date, and the other furnished one with a different date. This does not constitute a mutual mistake in any sense of the word. Without overturning practically every decision requiring mutuality of mistake we cannot dispense with that element in such cases, and it, as well as the allegation of absence of negligence of the plaintiff, is an absolutely necessary averment in any such complaint. Neither averment appears in this complaint, and this constitutes a fatal objection to the pleading. There is nothing in the statement from which we can infer either mistake of both parties or diligence on the part of the plaintiff. It is akin to the proposition that a party who can read and has the opportunity to read is bound by the terms of an instrument, if he does not read it: *Spitze* v. *Baltimore & O. R. R. Co.*, 75 Md. 162 (28 Atl. 307, 32 Am. St. Rep. 378); *Hoeger* v. *Citizens' St. Ry. Co.*, 36 Ind. App. 662 (76 N. E. 328); *Atchison, T. & S. F. R. Co.* v. *Vanordstrand*, 67 Kan. 386 (73 Pac. 113); *McNamara* v. *Boston Elev. Ry. Co.*, 197 Mass. 383 (83 N. E. 878); *Leddy* v. *Barney*, 139 Mass. 394 (2 N. E. 107); *Mateer* v. *Missouri Pac. Ry. Co.*, 105 Mo. 320 (16 S. W. 839); *Williams* v. *Wilson*, 18 Misc. Rep. 42 (40 N. Y. Supp. 1132); *Missouri, K. & T. Ry.* v. *Craig*, 44 Tex. Civ. App. 583 (98 S. W. 907); *Watson* v. *Planters' Bank*, 22 La. Ann. 14; *Eldridge* v. *Dexter R. Co.*, 88 Me. 191 (33 Atl. 974); *Leslie* v. *Merrick*, 99 Ind. 180; *Hawkins* v. *Hawkins*, 50 Cal. 558;

*Starr* v. *Bennett,* 5 Hill (N. Y.), 303; *Gibson* v. *Brown,* (Tex. Civ. App.), 24 S. W. 574; *Powers* v. *Powers,* 46 Or. 479 (80 Pac. 1058).

The decree should be reversed.

For these reasons, I dissent from the opinion of Mr. Justice BENSON.